CAPÓ, PLAINTIFF AND APPELLEE, *v.* FERNÁNDEZ, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Guayama in an Action for Acknowledgment of Condominium and for Damages.

Nos. 1801 and 1808.—Decided July 22, 1919.

INHERITANCE — HEIR — EJECTMENT — PARTITION — JOINT OWNERSHIP — JURISPRUDENCE.—The heirs succeed the deceased in all his rights and obligations from the moment of his death. By a partition each heir acquires the exclusive ownership of the properties allotted to him. Where one heir among many sues for an isolated property, or a separate portion of the estate, it is not sufficient for him to allege simply his title by inheritance, but he must also allege a partition of the estate. But when there is only one heir, or when there are several and all join, or when there are several and only one sues for the rights corresponding to him according to law in any or all of the properties of the estate, title by inheritance is sufficient and it is not necessary to allege a prior partition of the estate. The former jurisprudence of this court on this point should be considered as qualified by this doctrine.

The facts are stated in the opinion.

*Mr. Antonio Sarmiento* for the appellant.

*Messrs. Pedro Gómez Lasserre* and *Miguel Marcos Morales* for the appellee.

MR. JUSTICE DEL TORO delivered the opinion of the court.

Teresa Capó Vázquez, widow of Rivera, filed a complaint in the District Court of Guayama praying the court to adjudge the plaintiff to be the owner of a joint interest of 8.77 acres of land in a property of 104 acres, the remainder of

a property of greater area which is described. The complaint was demurred to and the demurrer was sustained. The dispositive part of the ruling of the district court is as follows: "For the foregoing reasons the court understands that although the complaint states a cause of action, if the facts therein alleged be accepted as true for the purpose of the demurrer, nevertheless the court thinks that the complaint should be amended so as to include the 23.83 acres composing the whole of the joint interest sued for by the plaintiff." According to the calculation made by the plaintiff, she was the owner of an interest of 23.83 acres in the whole property, but of only 8.77 acres of that part of the property held by the defendant, and, taking this into account, the prayer of her original complaint was for judgment for a joint interest of only 8.77 acres and reference was made to another action which she had brought against the same defendant in the same district court for damages resulting from the sale of the other portions of the property.

The plaintiff amended her complaint in conformity with the order of the court and also set up a claim therein for the sum of $15,000 for the actual or possible products of the condominium. The defendant again demurred to the complaint and the court overruled the demurrer. Thereupon the defendant answered, denying the allegations of the complaint, pleading acquisitive prescription against the recovery of the condominium and, as to the claim for damages, averring that even if the recovery of the condominium should be adjudged in favor of the plaintiff, having allowed more than fifteen years to elapse without claiming the profits, she had lost the right which she might have had if asserted in time. The case was brought to trial on the issue thus joined.

After the evidence was examined the district court entered judgment sustaining the plaintiff's claim to an undivided interest of 23.83 acres in the 104 acres in the possession of the defendant, annulling the dominion title proceeding brought by the defendant for the whole property, dismissing

the claim for damages and imposing upon the defendant the costs, disbursements and attorney fees.

The defendant appealed and the plaintiff also appealed from that part of the judgment which dismissed the claim for damages. We will consider both appeals in a single opinion and dispose of them by one judgment.

It is well to say that while the appeal was pending the defendant died and was substituted by his succession, composed of his children Agustín, Francisco, Marina, Josefina, Luis, Angel and Enrique Fernández Colón.

In order to avoid repetition we shall refer connectedly to the facts resulting from the pleadings and from the evidence.

Francisco Segundo Capó and Belén Vázquez, the parents of the plaintiff, married about the year 1843 and they both died intestate, the former in 1866 and the latter in 1870, leaving six children named Francisco Emiliano, Enrique, Belén, Arístides, Africa Ana and Teresa. It does not appear that the estate of the spouses Capó-Vázquez was partitioned according to law.

While married Francisco I. Capó acquired from José Rosario Vázquez by a deed of November 15, 1859, a property called Palo Seco, situated in the district of Cayey. After the death of Capó and his wife the said property passed to their heirs and was administered by Francisco Fernández Navas, the original defendant. In the fiscal year 1894–1895 he presented a schedule under oath stating, for the purposes of the payment of taxes, that the said property belonged to the Succession of Capó and was administered and cultivated by him.

In 1879 Enrique Capó, a son of the spouses Capó-Vázquez, conveyed his rights and interests in the maternal inheritance to Trinidad Rivera.

On April 8, 1891, Trinidad Rivera executed a public instrument conveying the said rights and interests to Joaquín Fernández Navas, and in the same instrument Teresa Capó Vázquez, the plaintiff, a daughter of the spouses Capó-Váz-

quez and the wife of Trinidad Rivera, stated that she was both the owner of and the heir to the rights and interests of her mother, María Belén Vázquez, and conveyed them to and renounced them in favor of the said Joaquín Fernández Navas.

By a public deed of July 23, 1895, Arístides and Ana Capó conveyed their inherited rights and interests in the Palo Seco plantation to their sister Belén.

On July 24, 1895, Belén Capó Vázquez and Joaquín Fernández Navas, as parties of the first part, and Francisco Fernández Navas, the original defendant, as party of the second part, executed an instrument before a notary public. The parties of the first part stated, among other things, "that they are the owners of some shares in the old Palo Seco plantation situated in the ward of Montellano of this municipality, which shares they acquired as follows: The former, Belén Capó, acquired one share in her own right as heir of her deceased father, Francisco I. Capó, and two other shares as grantee of her sister Ana Africa and her brother Arístides * * *. The latter, Joaquín, acquired two shares as grantee of the heir of Teresa Capó Vázquez and Trinidad Rivera * * *." And the said parties of the first part agreed, among other things: "First: That they hereby sell and convey to the party of the second part, Francisco Fernández, all their rights and interests in the lands of the Palo Seco plantation without any reservation, subrogating the grantee to the position of the grantors * * *." The grantee accepted the conveyance in the deed.

At this stage Francisco Fernández Navas instituted a dominion title proceeding in the District Court of Ponce to establish his ownership of the Palo Seco plantation. The record of that proceeding could not be introduced in evidence because it was not found in the archives of the court, but a certificate issued by the Registrar of Property of Guayama shows that the proceeding was approved, Fernández having been adjudged by the court on December 30, 1901, to be the

owner of the whole property and his title having been recorded in the registry on March 15, 1902. It appears from the registrar's certificate that "Francisco Fernández Navas, of age, married, property owner and a resident of Cayey, brought proceedings in the District Court of Ponce to establish his ownership of this property, of which he acquired a part by conveyance from Joaquín Fernández as grantee of Enrique and Teresa Capó and a part from Belén Capo in her own right as heir and as grantee of her sister Ana Africa and her brother Arístides by a deed executed before notary Casimiro Morales in Cayey on July 24, 1895, Isabel and Luisa Lleras Vázquez, as sole representatives of the succession of Rosario Vázquez, having also conveyed to him by a private agreement all their rights and interests in the said property."

After the dominion title had been recorded in his name in the registry the defendant segregated and sold three parcels of the property, as follows: One of 166 acres to the United States Government by a deed of December 30, 1913; another of two acres to Miles K. Taulbee by a deed of April 27, 1904, and another of two acres to Luis Muñoz Morales. According to the registry, the property was reduced to 108 acres.

These are, in brief, the facts disclosed by the record and which must be taken into account for arriving at a just decision of the question at issue.

There is no doubt as to the identity of the property. The acreage still in the possession of the defendant was a part of the Palo Seco Plantation acquired by the plaintiff's father in 1859. It is necessary to determine first whether the plaintiff is actually the owner of the condominium which she claims, and whether she is in a position to establish her claim according to law and jurisprudence.

When Francisco I. Capó purchased the property in question he was married to Belén Vázquez. The property was acquired therefore for the conjugal partnership.

Ganancial property is the common property of the husband and the wife and belongs to each in equal parts, for by virtue of the marriage a lawful partnership is established between the two spouses, different from other partnerships, whereby they mutually share their acquets. See laws 1, 2, 3, 4 and 5, tit. 4, lib. 10, *Novísima Recopilación.*

At the death of the husband the wife becomes vested with the full ownership and management of half of the ganancial property and may dispose of it freely. In the same manner the husband may dispose of his half upon the death of his wife. See Law 14 of Toro.

The system of ganancial property has existed here for centuries. The presumption that all property acquired during wedlock, with certain well defined exceptions, belongs to the conjugal partnership did not originate with the revised Civil Code, nor with the old Civil Code. Its origin is still more remote.

The conjugal partnership composed of the spouses Capó-Vázquez was dissolved by the death of the husband. Francisco Capó died intestate. His rights descended to his heirs at the moment of his death. Who were his heirs? The record shows that they were his six legitimate children, Francisco Emiliano, Enrique, Belén, Arístides, Africa Ana and Teresa. It does not appear that the conjugal partnership was liquidated, or that the estate was partitioned, but in the absence of a will the law determines the rights of each heir. The children inherit in equal parts. Here there were six. Therefore, each of them was entitled to one-sixth of the paternal estate.

From the moment of the death of Francisco I. Capó each of his children and heirs became a joint owner of one-sixth of one-half of the property, or of an undivided one-twelfth of the whole of the Palo Seco plantation.

Some years passed without the property's being divided and Belén Vázquez, the widow, died intestate, whereupon her estate passed to her children and heirs. So that in the

year 1870 the six children became the owners of the whole plantation.

The property remained undivided. Its ownership appeared in the name of the Succession of Capó. Defendant Francisco Fernández Navas administered and cultivated it and acknowledged the said succession as its owners.

There is no doubt that the plaintiff was one of the heirs and that she sold her rights and interests in the maternal estate. But the plaintiff never sold her rights in the paternal estate, and these are the rights for which she is now suing.

It is alleged that as the estate was not partitioned the plaintiff is not in a lawful position to establish her claim, citing the jurisprudence of this court in *Esteves* v. *del Río et al.*, 7 P. R. R. 274, 293; *Escalona* v. *Registrar of Property*, 9 P. R. R. 523; *Fernández et al.* v. *Velázquez*, 17 P. R. R. 716; *Velilla* v. *Pizá et al.*, 17 P. R. R. 1069; *Cruz et al.* v. *Ortiz*, 17 P. R. R. 1134; *Dávila* v. *Dávila et al.*, 18 P. R. R. 112; *Trinidad et al.* v. *Sucn. of Trinidad et al.*, 19 P. R. R. 616; *Vega et al.* v. *Rodríguez et al.*, 21 P. R. R. 318; *Cristián et al.* v. *Escobar et al.*, 23 P. R. R. 257.

The jurisprudence cited is based on section 1035 of the revised Civil Code, similar to section 1068 of the old Civil Code, providing that "a division legally made confers upon each heir the exclusive ownership of the property which may have been awarded to him," and on the jurisprudence of the Supreme Court of Spain. We will cite the judgment of December 17, 1873, 28 *Jur. Civ.* 690. Julián Bayo sued Juan Cuder for the recovery of one-fourth of a certain urban property. The said property belonged to María González, who died testate leaving as her heirs her son Manuel López and her grandchildren Julián, the plaintiff, and Gabina Bayo. Although only one-half of the property belonged to Manuel López, he exchanged it for another belonging to defendant Cuder. The complaint was dismissed and in affirming the judgment the Supreme Court of Spain said in its opinion:

"This court has expressly established the doctrine that an heir or participant in an estate does not acquire the ownership of a definite part of the estate and can not sue for it as such until it is expressly awarded to him in its partition; and the trial court having found, as the principal and lawfully decisive ground for absolving Juan Cuder from the complaint of Julián Bayo, that the latter had not proved the fact that as one of the heirs of his grandmother, María de las Nieves González, he had been awarded the one-fourth part of the property. in question which, as the owner, he seeks to recover from Cuder, it is evident that that finding of the trial court must be sustained unless it is shown that the court thereby violated some specific law or doctrine, and that has not been shown in this appeal."

A more mature study of this question leads us to the conclusion that although the jurisprudence of the Supreme Court of Spain and of this court is founded on the law, it has been given an excessive breadth of meaning in the case just cited from the Supreme Court of Spain and in some of the cases decided by this court. That doctrine should be limited to cases in which an heir, where there are several, sues for a detached property or a separate portion, but should not be applied when there is only one heir, or when there are several heirs and all join, or when there are several heirs and only one sues for the rights accruing to him under the law.

We shall cite some judgments of the Supreme Court of Spain in support of this conclusion.

In that of October 29, 1885, 58 *Jur. Civ.* 632, it was said:

"Being an heir, the plaintiff has capacity to sue for the rights proceeding from the testator, and he can not lose that capacity by the fact that he is not the sole heir, which would produce other results."

In that of October 18, 1894, 76 *Jur. Civ.* 219, it was held:

"Actions arising from the ownership of property recorded in the name of a deceased person in the registry of property may be brought before a partition and adjudication of the estate have been made, by all or one of the heirs of the deceased, who, by the mere

fact of his death, succeed to all his rights and obligations, as provided by Sec. 661 of the Civil Code.

In that of May 29, 1899, 87 *Jur. Civ.* 273, it was said:

"Taking as a basis the fact that at the time of the death of a person, the full ownership title to a real property was recorded in his name in the registry, it is indisputable that from the moment of his death his children acquired the property by direct succession, and the designation of intestate heirship recorded in their favor in the registry constitutes a dominion title sufficient to support an action of ejectment until it is opposed by a better title."

In that of November 23, 1903, 96 *Jur. Civ.* 693, it was established:

"In conformity with Sec. 661 of the Civil Code, the Supreme Court has repeatedly held that an heir, as successor of the deceased in all his rights and obligations, has the capacity to maintain an action to assert his rights without the concurrence of the other heirs, provided that it does the coheirs no prejudice and conforms to the laws governing community property, as the case may be."

In that of November 19, 1904, 99 *Jur. Civ.* 392, it was held:

"Sections 1068 and 1072 of the code do not preclude that all the heirs interested in an undivided property or right may sue for it without waiting until a partition or adjudication is made."

Although, in fact, the judgments just cited do not refer to cases similar to the case being considered, they bring out the fundamental principle by which we are guided in deciding this case and determining the scope of our own jurisprudence on the questions involved, to wit: That the heirs succeed the deceased in all his rights and obligations from the very moment of his death. By virtue of a partition each heir is awarded the part belonging to him and then that part becomes his private property, but a partition is not necessary in order that an heir may acquire and, if another person should question his right, sue for his proportional share in each and all of the properties of the estate, which propor-

tional share the testator himself may determine, within certain limits, or which, in the absence of a will, the law clearly determines.

After profound meditation upon the matter we are convinced that to apply our jurisprudence and that of the Supreme Court of Spain in the sense of requiring a previous partition in every case would be to make it impossible in practice to assert claims which are really just. A partition is necessary to support an action for detached, separate or definite properties which were a part of an estate but have been already awarded to a certain heir. Title by inheritance is sufficient when the plaintiff prays for acknowledgment in his favor of the rights that the law itself assigns to him.

In this particular case under consideration the original defendant contracted directly with the heirs of the spouses Capó-Vázquez or with their grantees. All of his rights in the Palo Seco plantation were acquired in this manner. The plaintiff had certain interests in the said property as heir of her parents. She sold those proceeding from the maternal estate. She never parted with those acquired in the paternal estate. At the death of her father the law made the plaintiff the owner of a one-sixth interest in the undivided half of the property belonging to her father and she is still the owner of that one-sixth share because she has never validly disposed of it.

A partition of the estate is not necessary, because the plaintiff prays, although mistakenly as we shall presently see, that the defendant be adjudged to acknowledge her rights and not that he deliver to her a fixed and separate portion of the property. This does not mean that an action for a partition cannot be joined with the action for acknowledgment or for the recovery of a condominium, but the plaintiff has not done this and prays only for the acknowledgment of her rights.

We do not agree that the condominium can be fixed at a

certain number of acres, as the plaintiff prayed and the court adjudged. One acre of good land, or land well situated, in a property may be worth as much as ten acres of poor land, or land badly situated, of the same property. Much less do we agree that the plaintiff's whole interest in the original property should be acknowledged as included in the part of that property remaining in the possession of the defendant. In the whole property and in each square meter or particle of the property the plaintiff had a one-twelfth interest as heir of her father, and that proportional interest attached as well to the land sold as to the land now held by the defendant. The plaintiff's action is directly against the land. If by virtue of the same laws a part of that land is beyond the plaintiff's reach because it has been acquired by persons who have the lawful character of third persons, that fact prejudices the plaintiff to the extent that she only has a cause of action (but we do not prejudge this question) against the vendor. The plaintiff can recover only her one-twelfth of the lands still in the possession of the defendant, and nothing more. Nothing said in this paragraph should be understood as prejudging what might be done in an action for a partition.

The question regarding prescription is simple. In case the action here exercised were prescriptible, the defendant has no colorable title to set up against that of the plaintiff. Only extraordinary prescription by virtue of his possession as owner could have served as a basis for the acquisition by the defendant of the right which the plaintiff claims in this suit. Thirty years did not intervene between 1895 and 1917 when the complaint was filed.

There is another question raised by the defendant which creates some confusion in the consideration of this case. Fernández Navas maintains, and it so appeared in the dominion title proceeding, that he also acquired the alleged rights of Lucía and Isabel Llera, heirs of José Rosario. Váz-

quez, the vendor of the property in 1859. It seems that a long time ago there were disagreements between the vendor and the vendee, resulting in a suit between their successions which lasted for ten years, and it does not appear whether that suit was definitely disposed of, but the property actually passed into the possession of Capó and later into that of his heirs, whose interests the original defendant gradually purchased. If for any reason Capó were liable to José Rosario Vázquez or his succession, as the original defendant acquired the rights of that succession he could sue the heirs of Capó, among whom is the plaintiff herself. Neither do we prejudge this question.

It only remains to consider the claim for damages. We shall say only that we have examined the pleadings and the evidence and agree with the conclusion reached by the trial judge.

The judgment annulled the dominion title proceeding totally. That adjudication was not prayed for by the plaintiff.

In view of all the foregoing, we are of the opinion that, considering both appeals together, the judgment appealed from should be modified by eliminating the pronouncement as to the nullity of the dominion title proceeding and making the dispositive part read as follows: "1st. It should be and is adjudged that the plaintiff is the owner of a condominium of an undivided one-twenfth of that part of the Palo Seco plantation which is in the possession of the defendant and which, according to the registry, consists of 108 acres, bounded on the north by properties of Ana Baldrich and Joaquín Aponte; on the south by the land of the Federal Government; on the east by lands of Francisco Fernández, and on the west by properties of Miguel Muñoz, Pedro Rodríguez, Joaquín Aponte and Patricio Rodríguez. And it is ordered that the defendant acknowledge such right in the plaintiff with all the consequences resulting from such acknowledgment. 2nd. That the claim of the plaintiff against the de-

fendant for the sum of $15,000 should be and is dismissed without special imposition of costs."

<em>Modified and affirmed.</em>

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.